IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| PAMELA D. SELF, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 06-G-1575-J |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**MEMORANDUM OPINION**

The plaintiff, Pamela D. Self, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R. § 404.1520 (a)-(f). The Commissioner must determine in sequence:

   (1)   whether the claimant is currently employed;

   (2)   whether she has a severe impairment;

   (3)   whether her impairment meets or equals one listed by the Secretary;

   (4)   whether the claimant can perform her past work; and

    (5)    whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope, at 477; accord Foot v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

In the instant case, the ALJ, Earl C. Cates, Jr., determined the plaintiff met the first two tests, but concluded she did not suffer from a listed impairment. Specifically, the ALJ found that "the claimant has recurrent headaches, a seizure disorder, and an adjustment disorder, impairments that are severe in combination within the meaning of the Regulations, but not severe enough to meet or medically equal" the Listings.  [R. 22].  The ALJ found the plaintiff able to perform a significant range of light work, and accordingly found her not disabled.

## THE STANDARD FOR REJECTING THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted:  "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim."  Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988).  "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary."

McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991).  In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...."  McGregor, 786 F.2d at 1053.  If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true.  McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216.  The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence.  See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

### THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required.  The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments.  "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the

articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law. Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims." Id. If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand. As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited. Id. This also holds true for the opinions of treating physicians.

## DISCUSSION

The plaintiff claims disability from May 1, 2002, because of a seizure disorder, degenerative disc disease of the cervical and lumbar spine, and migraine headaches. A claimant meets the Listing for epilepsy if she is diagnosed with "convulsive epilepsy (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment." 20 C.F.R. § 404.1525, Appendix 1, ¶ 11.02.

Farouk A. Raquib, M.D., the plaintiff's neurologist, has treated the plaintiff since 2000. [R. 205-264, 311-402]. On August 17, 2004, Dr. Raquib completed a Seizures Residual Functional Capacity Questionnaire in which he stated he has seen the plaintiff on a bi-weekly to monthly basis for a seizure disorder, neck pain, migraine

headaches and gastroesophogeal reflux disease. [R. 313]. Dr. Raquib indicated that the plaintiff suffers from generalized grand mal seizures which occur three to four times a month. [Id.]. These seizures last between five minutes to 30 minutes, and occur without warning. [Id.]. Dr. Raquib opined that stress and exertion are factors that lead to the seizures. [R. 314]. After the seizures, the plaintiff suffers from exhaustion and severe headaches. [Id.]. Dr. Raquib stated that the plaintiff was taking Dilantin[1] to control seizure activity, but that the plaintiff was not seizure free. [Id.]. He noted that the plaintiff was compliant with taking her medication, but that because of her nausea with migraines, she is not always able to hold medicine down. [Id.]. Dr. Raquib estimated that the plaintiff's seizures would cause her to be absent from work at least three times a month. [R. 316].

Because Dr. Raquib is a specialist in the field of neurology, his opinion is entitled to more weight in this area. Additionally, because Dr. Raquib is the plaintiff's treating physician, the ALJ's reasons for discrediting his opinion must be supported by substantial evidence. If the ALJ fails to properly refute Dr. Raquib's opinion, his testimony must be taken as true. ALJ Cates found:

> Specifically, the medical records in evidence do not conclusively demonstrate that, absent medical noncompliance, the claimant has epilepsy or major motor seizures documented by an EEG and accompanied by a detailed description of a typical seizure pattern, including all associated

---

[1] Dilantin is a "trademark for preparations of phenytoin," which is "an anticonvulsant and cardiac depressant used in the treatment of all forms of epilepsy except petit mal and as an antiarrhythmic, administered orally." Dorland's Illustrated Medical Dictionary 469, 1278 (28th Ed. 1994).

> phenomena, occurring more frequently than once a month in spite of at least three months of prescribed treatment with daytime episodes or nocturnal episodes manifesting residuals which interfere significantly with activity during the day as required by Section 11.02 of The Listing of Impairments.

and:

> Moreover, the evidence of record does not contain a record of anticonvulsant serum blood levels with anticonvulsant drug levels within therapeutic range, which is required before any claim can be allowed pursuant to Social Security Rule 87-6 pertaining to the proper evaluation of a seizure disorder.

[R. 22]. The ALJ's statement that an electroencephalogram (EEG) is required to document the plaintiff's epilepsy is in error. The Regulations require only evidence of seizure activity and do not require that the record contain results of an EEG. 20 C.F.R. § 404.1525, Appendix 1, ¶¶ 11.00, 11.02 and 11.03.

In his decision, the ALJ states that Dr. Raquib's treatment records "clearly reveal that the claimant has been medically noncompliant" in taking her prescribed anticonvulsant medication. [R. 29]. A May 1, 2003, treatment note from Dr. Raquib does state:

> Dilantin level is 5.6. I believe that she is not taking her meds regularly. I've impressed on her the importance of taking her meds on a regular basis to keep her Dilantin level therapeutic.

[R. 346]. Also, a June 5, 2003, treatment note from Dr. Raquib states that the plaintiff "must take her Dilantin." [R. 343]. As such, the ALJ discredited Dr. Raquib's report because the ALJ concluded that the plaintiff was not compliant in taking her medication. However, a review of the reported blood serum levels of Dilantin reveals the following:

| Date | Dilantin Level (ug/ml) | Therapeutic Level |
|---|---|---|
| 4/29/02 | <3.0 | subtherapeutic |
| 5/15/02 | 5.5 | subtherapeutic |
| 5/30/02 | <3.0 | subtherapeutic |
| 6/11/02 | 5.0 | subtherapeutic |
| 6/25/02 | 7.5 | subtherapeutic |
| 7/9/02 | 6.4 | subtherapeutic |
| 7/23/02 | 7.6 | subtherapeutic |
| 8/6/02 | 9.9 | subtherapeutic |
| 8/20/02 | 12.4 | therapeutic |
| 9/17/02 | 5.3 | subtherapeutic |
| 10/1/02 | 6.6 | subtherapeutic |
| 10/18/02 | 18.6 | therapeutic |
| 10/31/02 | 12.5 | therapeutic |
| 11/13/02 | 11.8 | therapeutic |
| 11/18/02 | 13.1 | therapeutic |
| 11/27/02 | 14.1 | therapeutic |
| 1/8/03 | 19.3 | therapeutic |
| 2/3/03 | 14.4 | therapeutic |
| 2/28/03 | 10.5 | therapeutic |
| 3/31/03 | 12.3 | therapeutic |
| 4/17/03 | 7.7 | subtherapeutic |
| 5/1/03 | 5.6 | subtherapeutic |
| 5/15/03 | 8.9 | subtherapeutic |
| 6/5/03 | 9.6 | subtherapeutic |
| 7/2/03 | 11.8 | therapeutic |

| Date | Dilantin Level (ug/ml) | Therapeutic Level |
|---|---|---|
| 7/30/03 | 17.3 | therapeutic |
| 8/27/03 | 14.0 | therapeutic |
| 9/23/03 | 10.3 | therapeutic |
| 10/20/03 | 16.2 | therapeutic |
| 11/19/03 | 8.6 | subtherapeutic |
| 12/2/03 | 11.7 | therapeutic |
| 12/17/03 | 8.8 | subtherapeutic |
| 1/15/04 | 9.8 | subtherapeutic |
| 2/12/04 | 13.4 | therapeutic |
| 3/9/04 | 16.1 | therapeutic |
| 4/5/04 | 11.7 | therapeutic |
| 5/3/04 | 11.0 | therapeutic |
| 5/27/04 | 14.5 | therapeutic |
| 6/24/04 | 16.3 | therapeutic |
| 7/20/04 | 16.6 | therapeutic |
| 8/16/04 | 19.6 | therapeutic |

[R. 239-259; 377-399]. Of the 41 blood tests, eight showed values that were clearly subtherapeutic, while nine showed values that were slightly below the therapeutic level. The remaining 24 blood tests were clearly in the therapeutic range. Of particular note to the court is Dr. Raquib's note that the plaintiff has nausea with migraines and therefore is not always able to hold her medicine down. [R. 315]. Indeed, a nurse's note from the September 23, 2003, blood test advised the plaintiff to divide her dosage of Dilantin from one dose a day to two smaller doses to avoid nausea. [R. 390]. The plaintiff is

substantially compliant with her treatment regimen.  The ALJ's conclusion that the plaintiff was non-compliant in taking her medication is not supported by the record.  As such, his reasons for discrediting the report of Dr. Raquib are not supported by substantial evidence, and the report must be taken as true.

Taking as true Dr. Raquib's report that despite at least three months of prescribed treatment,  the plaintiff suffers from generalized grand mal seizures at the frequency of three to four per month.  Therefore, she meets Listing 11.02, and is disabled within the meaning of the Act.

Even if the plaintiff did not meet the Listing, the Commissioner failed to carry his burden at Step Five that the plaintiff could perform other work.  Dr. Raquib's opinion was that the plaintiff could be expected to be absent from work at least three days a month because of her condition.  [R. 316].  At the ALJ hearing, Karen Vessell, a Vocational Expert (VE), testified as follows:

> ATTY:    The significant thing about a seizure disorder from a vocational perspective would be the absenteeism associated with it, wouldn't it?
>
> VE:      Yes, that is [INAUDIBLE].
>
> ATTY:    In the type of work for this lady might otherwise be qualified to perform, I'm gonna suggest to you that, that would be primarily sedentary, light work, unskilled, low semi-skilled, what would be the tolerance for absenteesim?
>
> VE:      Generally, an employer does not allow an individual to miss over 1 to 2 days a month.
>
> ATTY:    And the consequences to the worker if they exceed that?

| | |
|---|---|
| VE: | Generally, they're terminated. |
| ATTY: | So if we are to assume an individual of similar age, education and work experience as Ms. Self, who, because of less than optimally controlled seizure disorder, would miss three days a month as outlined by the treating specialist, Dr. [Raquib], that would be excessive absenteeism in your judgment? |
| VE: | Yes, at this level of jobs we're discussing, unskilled and that level. |

[R. 67].

If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true. McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216. Because the ALJ improperly ignored the report of Dr. Raquib, as a matter of law it must be accepted by the court as true. Based upon that report and the VE's testimony, the plaintiff is disabled within the meaning of the Social Security Act. This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed. Id. An appropriate order will be entered contemporaneously herewith.

DONE and ORDERED 24 March 2008.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.